VENABLE LLP
Amit Rana (SBN 291912)
  Arana@venable.com
101 California Street, Suite 3800
San Francisco, CA 94111
Telephone:    415.653.3750
Facsimile:    415.653.3755

*Attorneys for Plaintiff*
*OLYMPIC MEDIA, LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OLYMPIC MEDIA, LLC, a Virginia limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>ITERABLE, INC., a Delaware corporation,<br><br>Defendant. | Case No.<br><br>**PLAINTIFF OLYMPIC MEDIA LLC'S COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Olympic Media, LLC ("Olympic") hereby files this complaint against Iterable, Inc. ("Iterable") and alleges as follows:

## I.  INTRODUCTION

1. Olympic is a direct response advertising agency that provides high-quality content and digital assets—from copywriting and advertising creative to cutting-edge texting and marketing automation—to engage the audiences of nationally known, top-tier brands. Olympic leads the digital advertising and fundraising efforts for some of the most notable political campaigns and political advocacy groups in the nation, deploying email and text messaging to targeted audiences.

2. Iterable is a software-as-a-service marketing automation platform that enables the personalization and deployment of email, push notifications, and text messages to its customers' subscribers.

3. Olympic entered into an agreement with Defendant Iterable for email and text message marketing services in December 2019. As a result of technical and account management shortcomings, Iterable consistently failed to properly calculate Olympic's subscription usage and failed to provide accurate bills to Olympic. When Iterable's increasing demands for hundreds of thousands of dollars were not met, it improperly cut all services to Olympic in an attempt to extort a new, multi-million dollar contract. This action seeks recovery of the damages incurred by Olympic as a result of Iterable's sudden and improper termination of services in breach of the parties' agreement.

## II.  PARTIES

4. Plaintiff Olympic Media, LLC is a Virginia limited liability company with its principal place of business located at 2402 Potomac Avenue, Unit 102, Alexandria, Virginia 22301.

5. Defendant Iterable, Inc. is a Delaware corporation with its principal place of business located at 71 Stevenson Street, Suite 300, San Francisco, California 94105.

## III.  JURISDICTION AND VENUE

6. This action is between citizens of different states; plaintiff Olympic is a citizen of

1  Puerto Rico based on the residence of its member, and defendant Iterable is a citizen of California. The amount in controversy, without interest and costs, exceeds $75,000. This Court therefore has diversity subject matter jurisdiction, pursuant to 28 U.S.C. § 1332, over Olympic's claims for breach of contract and breach of the implied covenant of good faith and fair dealing.

7.   This Court has personal jurisdiction over Iterable because it has substantial contacts with and transacts substantial business in the State of California and in this District. In addition, Iterable consented to personal jurisdiction in this District in the Master Services Agreement between Iterable and Olympic, which provides that "[a]ll disputes under this Agreement will be brought in the state courts and the federal courts located in San Francisco, California, and the Parties hereby consent to the personal jurisdiction and venue of these courts."

8.   Venue is proper in this District for the same reason; *i.e.*, because the Master Services Agreement provides that "[a]ll disputes under this Agreement will be brought in the state courts and the federal courts located in San Francisco, California, and the Parties hereby consent to the personal jurisdiction and venue of these courts."

9.   Venue is also proper in this District under 28 U.S.C. § 1391(b)(2) because Iterable resides in this District and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

### IV.   STATEMENT OF FACTS

**A.   The Master Services Agreement**

10.   On or about December 25, 2019, Olympic and Iterable entered into a Master Services Agreement ("MSA") pursuant to which Olympic engaged Iterable's marketing automation platform and services. The MSA became effective upon the execution of an Enterprise Sales Order Form (the "Order," and together with the MSA, the "Agreement") that incorporated the MSA and set forth additional terms and conditions.

11.   Under the terms of the Agreement, which had been negotiated in consideration of Olympic's recent growth, Olympic paid a monthly fee of $13,079 for a subscription package that included the annual deployment of up to 135 million emails and 7.5 million text messages. Per the Agreement, usage was to be calculated at the end of each 30-day cycle and "overage fees" were

to be invoiced monthly—at a rate of $0.40 per 1,000 emails and $0.0050 per SMS text message—if Olympic exceeded the foregoing subscription caps.

12. Olympic has made all monthly payments on a timely basis.

**B. Iterable System Errors Result in Billing Inaccuracies and Improper Reporting of Overages**

13. Throughout the duration of the parties' relationship, Iterable experienced multiple accounting system errors, which resulted in billing inaccuracies and incorrect tracking of Olympic's subscription usage.

14. On several occasions, Iterable's Customer Success Manager, Gina Garechana, confirmed that Iterable was unable to regularly keep track of Olympic's usage and, thus, could not help mitigate any overage fees. For example, on or about January 30, 2020, Ms. Garechana informed Olympic of a finance error, due to which email usage had been incorrectly charged, and issued a corrected invoice, which Olympic timely paid.

15. On or about June 9, 2020, Iterable first informed Olympic of "significant" usage overages under the Agreement. In order to offset the purported "overage" fees, Ms. Garechana recommended an early renewal of the Agreement, which was set to expire and automatically renew in September 2020. In reliance on Iterable's (incorrect) accounting and record keeping, Olympic agreed to negotiate an early renewal of the Agreement.

16. During the parties' negotiations of a new contract, additional accounting and tracking errors by Iterable came to light. For example, on or about June 18, 2020, Iterable informed Olympic that, although text message overages amounting to over $120,000 had begun incurring months previously, Iterable failed to invoice such overage fees monthly with Olympic's normal billing cycle—as required under the Agreement—due to accounting system errors.

17. The following day, June 19, 2020, during a Zoom meeting, Iterable for the first time reported that overage fees for services many months ago were actually much higher than previously reported, totaling approximately $260,000.

18. Iterable's Corporate Controller followed up on or about June 22, 2020, explaining that a system error had caused Iterable's failure to generate overage billings, and provided an invoice of missed billings totaling $275,468.51.

### C. Iterable Leverages Alleged Overage Fees and Suspension of Services to Extort Multi-Million Dollar Contract

19. Iterable was unable to accurately account for, track, and bill the overage fee calculations throughout the month of June 2020. And on June 27, 2020, Iterable used its own inaccurate bookkeeping as pretext for unexpectedly terminating Olympic's text messaging services, in breach of the Agreement.

20. Iterable was aware that it was an especially critical time for the re-election efforts of Olympic's political campaign and advocacy group clients. Iterable, thus, leveraged its improper service withdrawal to extract as much fees as possible in a new contract with Olympic. Under the Agreement, Olympic had been paying approximately $13,000 per month in subscription fees, but on June 30, 2020, Iterable offered four proposals for a new contract ranging between $4.8 million and $8.7 million per year (representing increases of between 31 and 56 times what Olympic had been paying on a monthly basis).

21. Iterable's efforts to rewrite a contract that turned out to be a bad business deal were confirmed when Iterable's CEO admitted that, even after the payment of allegedly owed overage fees, Iterable will have lost money on its contract with Olympic due to Iterable's own separate contracts with other third-party vendors. In other words, because Iterable struck unprofitable agreements with third parties, it would still lose money on its deal with Olympic despite the purported overage fees associated with Olympic's text messaging and emailing usage.

22. On or about July 21, 2020, Iterable demanded immediate payment in full of an allegedly outstanding balance that included $326,071.24 in purported overage fees. Iterable told Olympic that, if Olympic didn't agree to the overage fees, which were based on Iterable's own accounting systems that have been mired in inaccuracies for the duration of the business relationship, then Iterable would completely suspend all services to Olympic during the critical period for Olympics largest clients.

23. Three days later, on July 24, 2020, Iterable terminated Olympic's email services, in breach of the Agreement.

24. Olympic has incurred, and continues to incur daily, substantial monetary and other damages as a result of Iterable's sudden termination of services. Among other things, as a result

of Iterable's actions, Olympic has lost and continues to lose approximately $17,000 to $20,000 in revenue daily.

26. Additionally, Olympic has expended in excess of $250,000 on temporary marketing service solutions while scrambling to find a new vendor.

**FIRST CLAIM FOR RELIEF**

**(Breach of Contract)**

26. Olympic repeats and incorporates by reference all of the above allegations.

27. Olympic and Iterable entered into a valid and enforceable contract; *i.e.*, the Agreement.

28. Olympic fully performed all of its obligations under the Agreement.

29. Iterable materially breached the Agreement, as described above, by, among other things, improperly terminating Olympic's services.

30. As a direct and proximate cause of Iterable's breaches, Olympic has suffered monetary and other damages in an amount to be determined at trial, but in no event less than $850,000.

**SECOND CLAIM FOR RELIEF**

**(Breach of Implied Covenant of Good Faith and Fair Dealing)**

31. Olympic repeats and incorporates by reference all of the above allegations.

32. Under California law, every contract contains an implied covenant of good faith and fair dealing, which prevents contracting parties from unfairly frustrating the other party's enjoyment of rights under the contract.

33. Olympic and Iterable entered into a valid and enforceable contract; *i.e.*, the Agreement.

34. Olympic fully performed all of its obligations under the Agreement.

35. Despite Olympic's performance, Iterable materially and in bad faith breached the Agreement, as described above, by, among other things, improperly terminating Olympic's services.

36. Iterable's material breaches, as described above, frustrated and unfairly interfered

with Olympic's right to receive the benefits of the Agreement.

37. Iterable's conduct constitutes a breach of the implied covenant of good faith and fair dealing, and has caused Olympic monetary and other damages in an amount to be determined at trial, but in no event less than $850,000.

## **PRAYER FOR RELIEF**

WHEREFORE, Olympic prays for judgment from this Court as follows:

a. That the Court award damages to Olympic, including interest, in an amount to be determined at trial, but in no event less than $850,000;

b. That the Court award to Olympic its attorneys' fees and costs of suit; and

c. That the Court grant such other relief as it deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff Olympic hereby demands trial by jury for all causes of action, claims or issues in this action that are triable as a matter of right to a jury.

Dated:  August 12, 2020                                VENABLE LLP

By:  /s/ Amit Rana
     AMIT RANA

*Attorneys for Plaintiff*
OLYMPIC MEDIA, LLC