1    ALTO LITIGATION, PC.
        Bahram Seyedin-Noor (Bar No. 203244)
2       bahram@altolit.com
        Ellen London (Bar No. 325580)
3       ellen@altolit.com
     Four Embarcadero Center, Suite 1400
4    San Francisco, CA 94111
     Telephone: (415) 779-2586
5    Facsimile: (415) 306-8744

6
     Attorneys for Defendant and Counterclaimant,
7    Iterable, Inc.

8                         UNITED STATES DISTRICT COURT

9                       NORTHERN DISTRICT OF CALIFORNIA

10                              OAKLAND DIVISION

11
     Olympic Media, LLC,                    Case No. 20-cv-05616-PJH
12
                    Plaintiff,              **DEFENDANT ITERABLE, INC.'S**
13                                          **ANSWER TO COMPLAINT AND**
     v.                                     **COUNTERCLAIMS**
14
     Iterable, Inc.,                        **DEMAND FOR JURY TRIAL**
15
                    Defendant.
16
                                            Judge: Hon. Phyllis J. Hamilton
17

18   Iterable, Inc.,

19                  Counterclaimant,

20   v.

21   Olympic Media, LLC,

22                  Counterdefendant.

23

24

25

26

27

28

Defendant Iterable, Inc. ("Iterable"), by and through undersigned counsel, hereby answers and asserts affirmative defenses to Olympic Media, LLC's ("Olympic") Complaint (the "Complaint").

Iterable respectfully requests and reserves the right to amend, alter, and/or supplement the defenses contained in this Answer as the facts and circumstances giving rise to the Complaint become known to it through the course of the litigation.

## I.   <u>INTRODUCTION</u>

1.      The allegations in paragraph one characterize the nature and activities of Olympic, to which no response is required.  To the extent a response is required, Iterable does not have knowledge or information sufficient to form a belief as to the truth of the allegations.

2.      Iterable admits that its services include a software-as-service marketing automation platform that enables the personalization and deployment of email, push notifications and text messages to its customers' subscribers.

3.      Iterable admits that it entered into an agreement with Olympic for email and text messaging marketing services in December 2019.  Iterable denies the allegations in the second and third sentences of this paragraph.  The fourth sentence consists of Olympic's characterization of this action, to which no response is required.  To the extent a response is required, Iterable denies the allegations in the fourth sentence.

## II.  <u>PARTIES</u>

4.      The allegations in paragraph four characterize the nature and activities of Olympic to which no response is required.  To the extent a response is required, Iterable does not have knowledge or information sufficient to form a belief as to the truth of the allegations.

5.      The allegations in paragraph five characterize Iterable, and do not set forth a claim for relief or aver facts in support of a claim to which a response is required.  To the extent that a response is required, Iterable admits that it is a Delaware corporation with its

principal place of business located at 71 Stevenson Street, Suite 300, San Francisco, California 94105.

**III.   JURISDICTION AND VENUE**

6.      The allegations in paragraph six constitute Olympic's conclusions of law regarding jurisdiction, to which no response is required.

7.      The allegations in paragraph seven constitute Olympic's conclusions of law regarding jurisdiction, to which no response is required.

8.      The allegations in paragraph eight constitute Olympic's conclusions of law regarding venue, to which no response is required.

9.      The allegations in paragraph nine constitute Olympic's conclusions of law regarding venue, to which no response is required.

**IV.   STATEMENT OF FACTS**

10.     Iterable admits that it entered into an Enterprise Sales Order Form with Olympic on December 25, 2019 (the "Order Form"), which incorporates a Master Services Agreement ("MSA," and together with the Order Form, the "Agreement"), and respectfully refers the Court to the contents of the MSA and the Order Form for a complete and accurate statement of their contents.

11.     Iterable admits that the Order Form that it entered into with Olympic on December 25, 2019 provided for a monthly fee of $13,079.00 to be paid by Olympic which would cover up to 135 million annual emails and up to 7.5 million short message services ("SMS"); that on-demand usage was to be calculated at the end of each 30-day cycle; and that there was to be a fee of $0.40 per 1,000 emails and $0.50 per SMS message above the subscription amount.  Iterable denies the remaining allegations, and respectfully refers the Court to the contents of the Order Form for a complete and accurate statement of its contents.

12.     Iterable denies the allegations of paragraph twelve.

13.     Iterable denies the allegations of paragraph thirteen but admits that there was a system error that caused a delay in billing Olympic for certain overage charges due from

Olympic.  Iterable avers that the error that caused the delay in billing Olympic was identified and fixed.

14.     Iterable denies the allegations of paragraph 14 but admits that there was correspondence from Iterable in January 2020 noting that a single invoice had an error in it pertaining to certain charges for email overages for the prior period and attaching a revised invoice fixing the error.

15.     Iterable denies the allegations of paragraph 15 but admits that on June 10, 2020, an Iterable account manager sent an email to Olympic (following up on a discussion by phone on June 9, 2020) with a proposal for an early renewal of the Agreement in order to ensure that Olympic was getting the best pricing from Iterable, and that Olympic agreed to negotiate an early renewal.

16.     Iterable denies the allegations of paragraph 16 but admits that on June 18, 2020, an Iterable account manager informed Olympic that Olympic had been exceeding its contractual limits for SMS messages for the last several months; that the overages had not been invoiced with the normal billing cycle; and that the overage fees would be more than $120,000.

17.     Iterable denies the allegations of paragraph 17 but admits that on June 19, 2020, Iterable employees participated in a Zoom meeting with Olympic during which the Iterable employees discussed with Olympic that Olympic owed overage fees to Iterable.

18.     Iterable admits the allegations of paragraph 18.

19.     Iterable denies the allegations of paragraph 19 but admits that on June 26, 2020, Iterable terminated Olympic's text messaging services.

20.     Iterable denies the allegations of paragraph 20 but admits that on June 30, 2020, it offered Olympic proposals for a new contract, which included a number of different terms and ranged in price from $4.764 million to $8.719 million.

21.     Iterable denies the allegations of paragraph 21.

22.     Iterable denies the allegations of paragraph 22 but admits that on July 21, 2020, Iterable notified Olympic of the outstanding balance owed of $352,229.24 and gave

DEFENDANT ITERABLE, INC.'S ANSWER TO COMPLAINT AND COUNTERCLAIMS
CASE NO. 20-CV-05616-PJH

Olympic until July 24, 2020 to pay off this balance before Iterable would suspend Olympic's services.

23.     Iterable admits that it terminated Olympic's email services on July 24, 2020, but the remaining allegations of paragraph 23 state a legal conclusion to which no response is required; to the extent a response is required, Iterable denies the allegations.

24.     The allegations of paragraph 24 state a legal conclusion to which no response is required.  To the extent a response is required, Iterable denies the allegations.

25.     Iterable lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 25, and therefore denies them.

## V.     <u>FIRST CLAIM FOR RELIEF</u>

26.     Iterable incorporates by reference its response to paragraphs 1 through 25 above.

27.     The allegations contained in paragraph twenty-seven consist of Olympic's conclusions of law, to which no response is required.  To the extent a response is required, Iterable admits that it entered into a valid and enforceable contract with Olympic.

28.     The allegations contained in paragraph twenty-eight consist of Olympic's conclusions of law, to which no response is required.  To the extent a response is required, Iterable denies the allegations.

29.     The allegations contained in paragraph twenty-nine consist of Olympic's conclusions of law, to which no response is required.  To the extent a response is required, Iterable denies the allegations.

30.     The allegations contained in paragraph thirty consist of Olympic's conclusions of law, to which no response is required.  To the extent a response is required, Iterable denies the allegations.

## VI.    <u>SECOND CLAIM FOR RELIEF</u>

31.     Iterable incorporates by reference its response to paragraphs 1 through 25 above.

32.     The allegations contained in paragraph thirty-two consist of Olympic's conclusions of law, to which no response is required.

33.     The allegations contained in paragraph thirty-three consist of Olympic's conclusions of law, to which no response is required.  To the extent a response is required, Iterable admits that it entered into a valid and enforceable contract with Olympic.

34.     The allegations contained in paragraph thirty-four consist of Olympic's conclusions of law, to which no response is required.  To the extent a response is required, Iterable denies the allegations.

35.     The allegations contained in paragraph thirty-five consist of Olympic's conclusions of law, to which no response is required.  To the extent a response is required, Iterable denies the allegations.

36.     The allegations contained in paragraph thirty-six consist of Olympic's conclusions of law, to which no response is required.  To the extent a response is required, Iterable denies the allegations.

37.     The allegations contained in paragraph thirty-seven consist of Olympic's conclusions of law, to which no response is required.  To the extent a response is required, Iterable denies the allegations.

The remaining paragraph of the Complaint contains Olympic's requested relief, to which no response is required.  To the extent this paragraph is deemed to contain factual allegations, Iterable denies those allegations and denies that Olympic is entitled to any relief.

## ITERABLE'S AFFIRMATIVE DEFENSES

Further answering the Complaint, Iterable asserts, upon information and belief, each and every one of the affirmative defenses listed below as to each cause of action asserted against Olympic (unless otherwise stated) in the Complaint.  Iterable reserves the right to amend its answer with additional defenses as further information is obtained.

## FIRST AFFIRMATIVE DEFENSE

Olympic's claims are barred, in whole or in part, because Iterable did not breach any legal duties to Olympic.

## SECOND AFFIRMATIVE DEFENSE

Olympic's claims are barred, in whole or in part, because Iterable at all relevant times acted in good faith with respect to the parties' Agreement.

## THIRD AFFIRMATIVE DEFENSE

Any alleged damages or injuries suffered by Olympic, if any, in whole or in part, were not caused by or result from any act or omission by Iterable.

## FOURTH AFFIRMATIVE DEFENSE

Recovery by Olympic for any alleged damages or injuries suffered by Olympic, if any, in whole or in part, are barred by the limitation-of-liability provision in the MSA.

## FIFTH AFFIRMATIVE DEFENSE

Olympic's claims are barred, in whole or in part, because Olympic failed to properly mitigate its alleged damages, if any.

## SIXTH AFFIRMATIVE DEFENSE

Olympic's claims are barred, in whole or in part, because Olympic waived any right to relief to which it might otherwise be entitled.

## SEVENTH AFFIRMATIVE DEFENSE

Olympic's claims are barred, in whole or in part, because Olympic, by its own conduct, released and discharged Iterable from any liability.

## EIGHTH AFFIRMATIVE DEFENSE

Olympic's claims are barred, in whole or in part, by the doctrine of unclean hands.

## NINTH AFFIRMATIVE DEFENSE

Without conceding that any of Iterable's acts caused damage to Olympic, Iterable alleges that it is entitled to offset and recoup Olympic's obligations owing to Iterable against any judgment that may be entered against Iterable.

**TENTH AFFIRMATIVE DEFENSE**

Olympic's claims are barred in whole or in part, by the doctrine of estoppel.

**ELEVENTH AFFIRMATIVE DEFENSE**

Olympic's claims are barred, in whole or in part, by the doctrine of unjust enrichment.

**COUNTERCLAIMS**

Iterable, by its undersigned counsel, brings these counterclaims against Olympic and alleges as follows:

**INTRODUCTION**

1.      This is a breach-of-contract case, arising out of Olympic's baseless refusal to pay for services that Iterable provided to Olympic.  While Olympic has filed as the plaintiff, asserting that Iterable breached the contract, it is in fact Olympic that is in breach.

2.      Olympic entered into a contract with Iterable pursuant to which Olympic agreed to pay a certain price for monthly services up to a certain level and an additional price for services provided beyond that level.  Olympic used Iterable's services beyond the monthly level, but then refused to pay the additional price for the extra services.  Iterable properly terminated the contract.

3.      Rather than pay for the services, Olympic commenced this action.  Olympic has not claimed that it was not provided with the services, or that it was not obligated to pay for these services under its agreements with Iterable.  Rather, Olympic's entire argument is that by terminating the services, Iterable breached the contract.  That is wrong, and Olympic should be ordered to pay Iterable as required.

**PARTIES**

4.      Counterclaimant Iterable is a Delaware corporation with its principal place of business located at 71 Stevenson Street, Suite 300, San Francisco, California 94105.  Iterable provides a platform and related services for marketing automation and personalization to its customers, among other services.  Through its service marketing automation platform,

Iterable provides its customers with the ability to deploy emails, push notifications, in-app messages, and web push messaging to its customers' subscribers.  Iterable's customers have access to messaging, workflows, subscriber segmentation, template creation, and storage, as well as access to all metrics and reporting associated with messaging campaigns.

5.      On information and belief, Counterdefendant Olympic is a limited liability company organized under the laws of Virginia and having its principal place of business at 2402 Potomac Avenue, Unit 102, Alexandria, Virginia 22301.

6.      On information and belief, Olympic is an advertising agency.

### JURISDICTION AND VENUE

7.      This action is between citizens of different states, and the amount in controversy exceeds $75,000.  Accordingly, the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

8.      Olympic has, by commencing this action in this Court, consented to personal jurisdiction of and venue in this Court.  The Court also has personal jurisdiction over Olympic because the parties agreed that any disputes arising under the MSA would be brought in the state and federal courts located in San Francisco, California, and they consented to the personal jurisdiction and venue of these courts.  For this reason, venue is also proper in this Court.

### GENERAL ALLEGATIONS

9.      In June 2019, Iterable and Olympic entered into an agreement pursuant to which Iterable would provide for the deployment of email and text messages to Olympic's customers.  The agreement (the "Prior Agreement") was comprised of the MSA and an Enterprise Sales Order Form covering the time period April 25, 2019 through September 24, 2020.  *See* Exhibits 1 (MSA) and 2 (Order Form).

10.      The Enterprise Order Form for the Prior Agreement provided for the following services and prices:  $96,518.40 for a base subscription to Iterable's platform and up to 1.5 million profiles and 135 million annual email sends, and $33,000.00 for an SMS bundle to include up to 6 million SMS messages (also referred to as text messages), for a

total of $129,518.40.  The billing frequency was monthly, and the agreed upon payment term was "net 30."

11.    The Enterprise Sales Order Form states that on-demand usage was to be calculated at the end of each 30-day cycle starting with the subscription start date, with additional fees to be invoiced if the amount of emails or messages exceeded the subscription amount.  The additional fees were as follows: $0.40 per email sent above 135 million, an additional flat rate for profiles above $1.5 million, and $0.006 per text message sent above 6 million.

12.    The Enterprise Sales Order Form does not provide a deadline or other timeline by which Iterable was required to calculate or bill for the additional usage fees.  The terms explicitly note that the invoices are "subject to change based on overage fees."

13.    The Enterprise Order Form is subject to the additional terms set forth in the MSA.  As relevant, the MSA provides that either party may terminate the Agreement with 30 days' notice of breach, except in the case of a failure to pay fees, which must be cured within five days of receipt of written notice by Iterable.  The MSA provides that Iterable must invoice customers in advance and in accordance with the relevant Order Form, and that customers shall pay the fees specified in the relevant Order Form.  Payments not received by Iterable by the due date (within 30 days of the invoice date) will accrue late charges at a rate of 1.5% of the outstanding balance per month, or the maximum rate allowed by law, whichever is lower.  In the event of a failure to pay the fees, the customer "agrees to pay Iterable's costs of collection, including reasonable attorney's fees and costs."  And "[i]f [a] Customer's account is 30 days or more overdue, in addition to any of its other rights or remedies, Iterable reserves the right to suspend the Services provided to Customer, without liability to the Customer, until the Fees are paid in full."

14.    In December 2019, Iterable and Olympic entered into another agreement pursuant to which Iterable would provide for the deployment of email and text messages to Olympic's customers.  The agreement ("Agreement," as defined above as well) was

comprised of the MSA and the Order Form dated December 25, 2019.  *See* Exhibit 3 (Order Form).

15.     The Order Form provided for services to be provided between December 25, 2019, and September 24, 2020, to include the following:  $89,586.00 for a base subscription to Iterable's platform and up to 2 million profiles and 135 million annual email sends, and $28,125.00 for an SMS bundle to include up to 7.5 million SMS messages, for a total of $117,711.00.  The billing frequency was monthly, and the agreed upon payment term was "net 30."

16.     The Order Form states that on-demand usage was to be calculated at the end of each 30-day cycle starting with the subscription start date, with additional fees to be invoiced if the amount of emails or messages exceeded the subscription amount.  The additional fees were as follows: $0.40 per email sent above 135 million, additional flat rates for profiles above 2 million, and $0.50 per text message sent above 7.5 million.

17.     The Order Form does not provide a deadline or other timeline by which Iterable was required to calculate or bill for the additional usage fees.  The terms explicitly note that the invoices are "subject to change based on overage fees."

18.     While the Agreement provided for SMS (text) messages, Olympic also sent a high volume of MMS messages (text messages that include pictures, video, and/or audio content) through Iterable's platform.  Iterable never charged Olympic a higher overage rate for the MMS messages, instead charging the contract SMS rate for the MMS messages.

19.     Beginning in July of 2019, Olympic began exceeding its subscription amount for both text messages and emails.

20.     At all times that Olympic was using Iterable's services, Olympic could easily access its usage numbers on the Iterable platform.  Iterable ensured that Olympic knew how to use the platform, on which Olympic could see if and by how much it was exceeding the amounts covered by the base price in its contract.

21.     Olympic exceeded the subscription amounts by a significant amount.  In the period from May 25, 2020 to June 24, 2020 alone, Olympic sent over 7 million text messages

over its subscription amount of 7.5 million.  Sending 7 million messages in just that one-month period represented more than 11 times the contracted amount, on an annualized basis.

22.    In June of 2020, Iterable informed Olympic that Olympic owed fees for the overage amounts.

23.    In light of the fact that Olympic was exceeding its contracted amount of services, on June 10, 2020, Iterable offered Olympic the option for an early renewal of the parties' contract.  Iterable did this to help Olympic avoid incurring further overage charges.

24.    Between approximately June 18 and June 22, 2020, Iterable provided Olympic with several updates as to the overage amounts that were owed.  On June 22, 2020, Iterable's Corporate Controller explained that he had done an extensive analysis of what had happened with Olympic's fees, and he explained that the total amount owed for the overage fees was $275,468.51.  This amount included overage fees incurred under the prior contract (covering the period from July 2019 to December 24, 2019, for a total of $93,384.08), and the overage fees under the Agreement (a total of $182,084.43).

25.    Despite being given notice of the amount owed, and despite the contractual obligation to cure a shortfall within five days, Olympic did not pay this, or any other amount, for the overage fees that it had incurred.

26.    In late June, Iterable's Chief Executive Officer informed Olympic that Iterable would need to end the text services that Iterable was providing, given the volume at which Olympic was exceeding its contracted rates.  The service was ended on June 26, 2020.

27.    On June 30, 2020, Iterable offered Olympic certain options for a renewal contract.  Iterable did this in response to a request from Olympic to substantially increase its business with Iterable.  Olympic's Chief Executive Officer, in requesting the new contract terms, acknowledged the "substantially increased amount of usage we've seen."

28.    At no point did Iterable tell Olympic or in any way imply to Olympic that Iterable would be excusing the overage fees that Olympic owed to it.  To the contrary, Iterable's Chief Executive Officer reiterated to Olympic's Chief Executive Officer that "we'd

need these overages paid" before Iterable could move forward with sending more messages for Olympic.

29.     Olympic continued to refuse to pay any amount for the overage fees.

30.     On July 21, 2020, Iterable notified Olympic that Olympic had incurred $326,071.24 in overage fees to date, and that there was a current balance due on Olympic's account of $352,229.24.  This amount accounted for the $275,468.51 in overage fees calculated as of June 22, 2020; an outstanding bill from May 2020 for $14,856.00; and the May-June 2020 overage fees (which had not been included as of June 22), which were $61,904.73.  Iterable noted that its executive team had made good faith attempts to help Olympic clear the outstanding balance.  Iterable explained that if Olympic did not pay the outstanding balance by July 24, 2020, Iterable would suspend Olympic's services.  Iterable also provided Olympic with an amended agreement, which provided for a flat fee for all types of messages (both MMS and SMS, as well as emails), regardless of the numbers sent, and explained that it would be necessary to sign this in order for Iterable to continue providing Olympic with services.

31.     Olympic did not pay the outstanding balance due on July 24, 2020.

32.     Iterable suspended all services to Olympic on July 24, 2020.

33.     Olympic has still not paid any of the overage fees that it owes Iterable.

**CLAIMS FOR RELIEF**

**COUNT I**

**(Breach of Contract)**

34.     Iterable incorporates the allegations of paragraphs 1-33 of its Counterclaims as if fully set forth herein.

35.     In June of 2019, the parties entered into the Prior Agreement, through an Enterprise Sales Order Form and the MSA.  Iterable provided all of the services required under the Agreement.

36.     Pursuant to the Prior Agreement, Olympic agreed to pay Iterable for all services that Iterable provided, including overage fees for emails and text messages.

37.     Olympic breached the Prior Agreement by failing to pay the overage fees it incurred for services provided by Iterable.  Olympic remains in breach of the Prior Agreement.

38.     Pursuant to the Prior Agreement, Olympic owes Iterable the overage fees that it incurred.

39.     Iterable has sustained damages arising from Olympic's breach of this contract, in an amount to be proven at trial.

## COUNT II

### (Breach of Contract)

40.     Iterable incorporates the allegations of paragraphs 1-33 of its Counterclaims as if fully set forth herein.

41.     On December 25, 2019, the parties entered into the Agreement, through the Order Form and the MSA.  Iterable provided all of the services required under the Agreement.

42.     Pursuant to the Agreement, Olympic agreed to pay Iterable for all services that Iterable provided, including overage fees for emails and text messages.

43.     Olympic breached the Agreement by failing to pay the overage fees it incurred for services provided by Iterable.  Olympic remains in breach of the Agreement.

44.     Pursuant to the Agreement, Olympic owes Iterable the overage fees that it incurred.

45.     Iterable has sustained damages arising from Olympic's breach of the Agreement, in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Iterable prays for relief as follows:

1.     That judgment be entered in favor of Iterable and against Olympic on these Counterclaims;

2.     For Iterable to be awarded damages in an amount to be proven at trial as the law allows;

3.    For an Order awarding Iterable its attorneys' fees and costs; and

4.    For an Order awarding Iterable such other and further relief as the Court deems just and proper.

Iterable demands a jury trial for all issues so triable.


Dated:  September 8, 2020                              ALTO LITIGATION, PC


                                                      By:   /s/ Ellen London
                                                            Ellen London

                                                      Attorneys for Defendant and
                                                      Counterclaimant,
                                                      Iterable, Inc.